GEORGE A. SWASEY *vs.* MAINE CENTRAL RAILROAD COMPANY.

Piscataquis.    Opinion September 28, 1916.

*Contributory negligence.     Master and servant.     Servant using unsafe method to perform work.*

1.  Where freight cars were equipped with automatic couplers so as to couple by impact, as required by Act of Congress, March 2, 1893, chapter 196, section 2, a brakeman who, after failing to recouple cars by the automatic coupler went between moving cars and attempted to recouple them with his hands, when there was no necessity or circumstances that made it his duty to try such an unsafe method of work, was guilty of contributory negligence, defeating his right of recovery for injuries sustained by being caught in a guard rail where he was run over and injured.

2.  Where the master has provided a safe method for the servant to perform the work assigned to him and the servant knows it, and instead of using the safe method provided uses an unsafe method, without directions so to do from his employer, he does so at his own risk and is guilty of contributory negligence if injured while performing the labor in such manner.

Action on the case against defendant company for injuries received while in the employ of the defendant company as brakeman. Plaintiff filed motion for the allowance of amendment to his writ and the amendment was allowed. Defendant company

excepted to the allowance of the amendment and exceptions were allowed. Defendant company pleaded general issue. Verdict for plaintiff. Motion sustained. New trial granted.

Case stated in opinion.

*M. L. Durgin, and Hersey & Barnes,* for plaintiff.

*Fellows & Fellows,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, HALEY, HANSON, JJ.

HALEY, J. This is an action on the case brought by the plaintiff against the Maine Central Railroad Company to recover damages for injuries received while in the employ of the defendant company as a brakeman.

The plaintiff claims that the defendant negligently permitted, and allowed a certain guard-rail in its yard, at Oakland Junction and station, to be unblocked, unadjusted, unfilled and out of repair, and that, by reason of that negligence, while in the discharge of his duty as a brakeman in coupling and uncoupling cars in the yard, with all due care on his part, he caught his foot in said guard-rail and was held there while the train ran over him, causing the loss of his leg and inflicting other serious injuries. The jury returned a verdict for the plaintiff, and assessed damages at $8375, and the case is before this court upon a general motion to set aside the verdict, and also upon exceptions.

The plaintiff was thirty-two years old at the time of the accident, unmarried, and, prior to the accident, had worked at railroad work for seven years, as fireman, car repairer, car inspector and brakeman, and at the time of the injury, January 2, 1912, he was working as a brakeman for the defendant.

In the railroad yard at Oakland Junction, where the accident happened, are a number of tracks with turn-outs, side-tracks and switches, and there are about eighteen or twenty guard-rails in the yard. The guard-rails are constructed of bent rails placed on the inside of the main rail to keep the car wheels from leaving the track when switching from one track to another. The statute of the State obliges all railroads to keep these guard-rails blocked so that the feet of the employee cannot be caught therein. It is the

claim of the defendant that, at the time of the accident, its guard-rails were all properly blocked and in a safe condition.

The accident happened at about six o'clock in the morning. The plaintiff was acting as middle brakeman, and went with his lantern into the yard, with the other members of the crew, to make up a freight train for Kineo. The engine, with the buggy or caboose, went up the track called the main turn-out, where the caboose was left to await the final making up of the train. The plaintiff then went down with the engine, which hooked on to a string of cars on the side track and hauled them over the switch and started to back them up towards the caboose. At this time the cars were moving towards the caboose up what was called a one per cent. grade between two and three miles an hour. The plaintiff says that Smith, the head brakeman, ordered him to pull the pin of the fourth car, which he did, by operating a lever on the end of the car which raised the pin and uncoupled the car. All this was done by an automatic coupler, and done without going between the cars. The plaintiff was then informed by Smith, the head brakeman, that they didn't want that car, and he attempted to recouple the car by the use of the automatic coupler, but did not stop and start the cars, the pin did not drop, the chain slackened and by wiggling the lever with his hand he could not get the pin to drop or make the recouple by the use of the automatic coupler. Finding that he could not recouple the cars by moving the automatic coupler, as he was attempting to do, he put his lantern over his left arm, stepped in between the cars, grasped the iron lever of the car in front of him with his left hand, and attempted to place the pin by working it with his hand so it would drop and form a recoupling. The plaintiff testified that as he touched the pin with his right hand he felt his left foot catch in the guard-rail, which held him firmly to the track. The car, on which his left hand had grasped the lever, kept on moving, his foot would not release and he was pulled until obliged to drop upon the track between the rails. The cars passed over him and he received frightful injuries.

It is the claim of the defendant that the evidence shows that the plaintiff's foot did not catch in the guard-rail. It was admitted that the cars in question were equipped with automatic couplings, and that said couplers were in good condition, and no claim was

made that there was any defect in or about the cars or the couplings. The case shows that the cars in question were equipped with the automatic couplers; coupling by impact and uncoupling by the use of a lever on the side of the cars, as required by the Federal statute which provides: "That on and after the first day of January, 1898, it shall be unlawful for any such common carrier to haul, or permit to be hauled, or use or used on its line any cars moving interestate traffic not equipped with couplers, coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars. Act of March 2, 1890. Sec. 2, ch. 196, 27 Stat. L. 531.

The defendant relies upon the rule of law that, as between master and servant, if the servant has been guilty of contributory negligence, he can not maintain an action and recover damages for injuries that he sustained when his negligence contributed to the accident.

The cars between which the plaintiff was working at the time he received his injuries were equipped with automatic couplers, as required by the act of Congress. The coupler is a piece of mechanism by which, without going between the cars, but by operating a lever standing outside of the rail, the pin may be raised and the car uncoupled, so that the necessity of going between the cars for the purpose of uncoupling is anticipated by the lever. To couple the cars the mechanism requires that the cars shall be driven together by their own momentum, and the impact, when thus thrown together, causes the coupling contrivance to drop the pin into its place, and by this impact the necessity of going between the cars is obviated, and it is unnecessary, under ordinary circumstances, for the brakeman to go between the cars for the purpose of coupling or uncoupling them, and there is nothing in the record showing any necessity for the plaintiff to go between the cars for the purpose of coupling or uncoupling them, as he was attempting to do.

The plaintiff was an experienced railroad man. He knew of the danger of going between moving cars. He knew that the cars were equipped with automatic couplers; that the couplers were in working order, and that he could couple and uncouple the cars by the use of the automatic coupler without going between them.

There was no necessity or stress of circumstances that compelled him, or made it his duty to go between the cars. He knew that if he used the coupler in the manner that it was intended to be used, he could couple and uncouple the cars in safety, and instead of employing the safe method of doing the work, he saw fit to step into a dangerous position between moving cars and by the use of his hand to compel the coupler to work in a different manner than it was intended to work.

Where the master has provided a safe method for the servant to perform the work assigned to him, and the servant knows it, and, instead of using the safe method provided, uses an unsafe method without directions to do so from his employer, he does so at his own risk and is guilty of contributory negligence if injured while performing the labor. *Leard* v. *Paper Co.,* 100 Maine, 59; *Perkins* v. *Paper Co.,* 104 Maine, 109. There are many Federal cases which hold that the conduct of the plaintiff in this case was negligence, and if it contributed to his injury that he can not recover.

A parallel case is *Gilbert* v. *Railway,* 128 Federal, 529, in which the duty of the brakeman to use the automatic couplers was fully discussed, and the court said: "The devolution of this duty upon the carriers necessarily imposed upon their servants the corelevant duty of using the equipment thus furnished to them and of refraining from going between the ends of the cars to couple or uncouple, unless compelled to do so by necessity. Under this legislation the breach in either of the duties became the failure to exercise ordinary care and constituted actionable negligence. . . . The danger from the negligence of the defendant in permitting the guard-rail to become and remain unblocked was of the same nature, and was in reality a part of, the danger to which the plaintiff exposed himself when he stepped between the cars, and his ignorance of or danger from the unblocked guard-rail, while he knew the general and ordinary danger of the place, constitutes no legal excuse for his want of ordinary care, and cannot be permitted to relieve him from its fatal effects. This view of this question is sustained by a moment's consideration of the fact that the contention of the plaintiff's counsel is suicidal. If, as they argue, the plaintiff is guilty of no actionable or contributory negligence in entering and walking between the cars because he did not know or anticipate the negli-

gence of the defendant in leaving the guard-rail unprotected, then by the same mark the defendant was guilty of no actionable negligence in leaving the guard-rail unprotected, because it did not know or anticipate that the plaintiff would be guilty of the negligence of entering and walking between the moving cars uncoupling them, and if he had not done so he would not have been injured. The plaintiff then failed to discharge his duty to exercise ordinary care when he entered and walked between the moving cars to uncouple them, and this negligence directly contributed to his injury."

As the record clearly shows that the plaintiff was guilty of negligence in stepping between the moving cars to couple and uncouple them, and that his negligence contributed to the injury received by him, by the well settled rules of the common law his contributory negligence is a bar to this action, and it is unnecessary to consider the exceptions.

*Motion sustained.*
*New trial granted.*